Robert MARCELL, Plaintiff–Appellee, Cross–Appellant,

and

Cooper/T. Smith Stevedoring and the Home Insurance Co., Intervenors–Appellees,

v.

SEA–LAND SERVICE, INC., Defendant–Appellant, Cross–Appellee.

No. 88–3272.

United States Court of Appeals, Fifth Circuit.

Sept. 11, 1989.

---

Randall C. Coleman, III and Gerald T. Gelphi, New Orleans, La., for defendant-appellant, cross-appellee.

Marcus J. Poulliard and Lloyd N. Frischhertz, New Orleans, La., for Robert Marcell.

Before RUBIN, KING and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Sea–Land Services (Sea–Land) appeals the district court's judgment on the jury's verdict holding Sea–Land liable under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 *et seq.*, for the injuries of plaintiff-appellee Robert Marcell (Marcell). The jury found Sea–Land twenty-five per-cent responsible for Marcell's injuries, which he suffered while securing cargo on board Sea–Land's vessel, the SS OAKLAND. Sea–Land asserts that sufficient evidence does not support many of the jury's specific fact-findings. We agree and reverse the judgment against Sea–Land.

### Facts and Proceedings Below

Marcell was injured in New Orleans on February 19, 1985, while performing longshoreman work as a lasher on board the SS OAKLAND, which is operated and bareboat chartered by Sea–Land. Marcell was employed by Cooper/T. Smith Stevedores (Cooper), which contracted with Sea–Land to provide it stevedoring services. Forty-four-year-old Marcell had twelve years of experience as a longshoreman at the time of the accident. As a lasher, he helped to tie down thirty-five- and forty-foot containers being loaded on board the ship. The ship's crew did not supervise the longshoremen.

On the night of the accident, Marcell was working with a six-man crew securing containers on the back part of the ship. The accident occurred just aft of hatch 11, where a space several feet wide separated the ends of the containers on hatch 11 from a raised portion of the deck just aft of the space. A railing runs along the edge of the raised portion of the deck to prevent personnel from falling into the space. This railing is made of steel with vertical stanchions and three horizontal bars between the stanchions. In two areas where fixed ladders lead from the bottom of the space to the raised portion of the deck, the three horizontal bars are replaced by chains to allow access to the ladders.

Marcell was securing the lashing cables to the containers, and his co-employee, Bernell Scott (Scott), was in the space just aft of the containers securing the lower end of the cables to the turnbuckles affixed to the deck. Marcell asserts that he needed a ladder to affix the wires at the aft end of the containers at hatch 11. He testified that he asked Scott to get a ladder and that Scott yelled to the Cooper job foreman, Bradley, for one. Scott testified that on

the evening in question, he did not ask anyone for a ladder, and did not recall being asked for one. Bradley testified no one asked him for a ladder on that evening. In any event, Marcell never received a ladder. Consequently, he stood on the middle and top railing chains, and when the middle chain gave way under his weight he fell across the top chain and was injured. The district court did not submit to the jury Marcell's failure to provide a ladder theory.

The court, however, allowed Marcell to go to the jury on his second theory of liability. In responding to special interrogatories, the jury found: (1)(a) that the chain on which Marcell stood was unsafe, (b) that Sea–Land knew or should have known that the chain was unsafe, and (c) that Sea–Land knew or should have known that longshoremen would likely stand on the chain in performing their cargo operations; and (2) that Sea–Land's negligence as found in the affirmative answers to 1(a), (b), and (c) was a legal cause of Marcell's injury. The jury also found Marcell seventy-five percent contributorily negligent (and the district court reduced his recovery accordingly).

### Discussion

Sea–Land argues that there is insufficient evidence to support the jury's specific fact-findings that Sea–Land should have known that the chain was unsafe and that longshoremen would stand on the unsafe chain in their work. Applying the *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969), standard, we hold that the evidence is insufficient to support the finding that Sea–Land should have known that longshoremen would likely stand on the chain in the performance of their work.[1] It is settled in this Circuit that the mere presence of the vessel's crew on the ship does not prove even constructive knowledge of a hazardous condition. *Hill v. Texaco, Inc.*, 674 F.2d 447, 450 (5th Cir.1982) (no constructive knowledge of plaintiff's unreasonable practices in relation to hazardous condition known to vessel); *Stockstill v. Gypsum Transp.*, 607 F.2d 1112, 1117 (5th Cir. 1979), *cert. denied*, 451 U.S. 969, 101 S.Ct. 2044, 68 L.Ed.2d 347 (1981); *see also Futo v. Lykes Bros. S.S. Co., Inc.*, 742 F.2d 209, 220 (5th Cir.1984) (actual knowledge that plaintiff used unsafe scaffold could not be inferred from crew's presence during such use). Therefore, even if Marcell had adduced evidence that longshoremen had frequently stood on the chain,[2] and that Sea–Land's crew was on board the vessel while such work went on, these facts alone do not allow the inference that Sea–Land should have known of that use.

---

1. Because we find insufficient evidence in the record to support the jury's finding that Sea–Land *should have known* that longshoremen would likely stand on the unsafe chain in performing their cargo operations, we do not address Sea–Land's contention that Supreme Court and Fifth Circuit precedent require Marcell to prove that Sea–Land had actual knowledge of the unsafe condition of the chain and the longshoremen's likely use of it. *See Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 1622, 68 L.Ed.2d 1 (1981) (extending a vessel owner's duty *before* turning the vessel over to a stevedore "at least to ... warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.").

2. It is questionable that the record supports such a finding. Besides Marcell, only one other longshoreman, Arther Newton, testified that he had ever stood on the chain at hatch 11.

The testimony of Cooper job foreman Bradley answering "Yes" to Marcell's attorney's question, "To your knowledge, longshoremen have been using this banister, this chain, this guardrailing all the time, isn't that correct?" is not substantial evidence that longshoremen stood on the *chain,* as opposed to the railing, particularly in light of Bradley's testimony as a whole, where he on at least three occasions refers to standing *"on that rail" but never to* (his or anyone else's) standing on the chain. This is an issue on which Marcell had the burden of proof, and if Bradley's above-mentioned "Yes" answer is to be taken as referring to the chain, rather than merely to the rail, it was up to Marcell to so clarify it.

In any event, there is no evidence that the Sea–Land crew ever observed, or (other than simply being on board) was actually in a position to observe, *any* longshoreman standing on the chain, or ever learned (until after this incident) of such being done.

Marcell argues that he presented evidence from which a reasonable jury could find that a ladder could not be used in the space aft of hatch 11, and that Marcell could not perform his job without standing on *something* to boost him above the deck. He argues that a reasonable jury could deduce from these permissible findings that, because there was no alternative means of tying down the cargo at hatch 11, Sea–Land had constructive knowledge that longshoremen would stand on the unsafe chain. This conclusion, however, does not flow from the above two assertions because there is no testimony or other evidence that a longshoreman performing Marcell's job could not stand on the *railing* to complete his work, or that standing on the chain was a reasonable alternative.[3]

Therefore, Marcell failed to present evidence that Sea–Land had actual or constructive knowledge that longshoremen would likely stand on the unsafe chain in performance of their work. Consequently, Sea–Land is not liable for Marcell's injuries under the LHWCA. *See Scindia Steam Navigation Co., Ltd. v. De. Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 1622, 68 L.Ed.2d 1 (1981).[4]

### Conclusion

The record evidence does not support the verdict finding Sea–Land liable for Mar-cell's injuries. We further find that Marcell is entitled to no relief on the issues raised in his cross-appeal. The district court judgment against Sea–Land is REVERSED.

**3.** Marcell seems to argue that the necessity and/or reasonableness of standing on the chain can be inferred solely from the fact that Marcell had once done it and Newton had done it on one or more occasions. This inference, if allowed, however, would effectively place on vessel owners a duty to supervise the work of careless longshoremen. Such a duty has been rejected by this Circuit. *See, e.g., Hill,* 674 F.2d at 450, 451 (citing *Scindia,* 101 S.Ct. at 1624). It is implicit in *Scindia* that a vessel owner is not responsible to repair or warn of defects with which only a careless longshoreman would come in contact.

**4.** Marcell cross-appeals on three issues. First, he complains that the contributory negligence finding is inconsistent with the finding that Sea–Land knew or should have known longshoremen would likely stand on the chain. This point is immaterial in view of our holding that the latter finding is without sufficient support in the record. Second, he alleges that the court committed reversible error when it allowed Sea–Land to pose to its expert economist a hypothetical question including a fifty percent offset of Marcell's potential future lost wages. Even if this were error (and it is certainly not clear that it was), it relates to damages, and is immaterial in light of our holding that Sea–Land is entitled to judgment on the liability issues. Finally, Marcell argues that the district court improperly excluded as hearsay an accident report completed by Cooper's superintendent, Reed. We reject this contention, noting that Marcell did not make an offer of proof of the report, so this Court cannot determine on appeal whether information in the report was admissible as Reed's recorded recollection. We also observe that from what we can glean from the record, it appears that at least parts of the report were properly excluded because they were not based on Reed's personal knowledge, as is required under the recorded recollection exception to hearsay. E. Cleary, *McCormick on Evidence* at 865 (3d Ed., West 1984).